UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JENNY L. J.,[1]

Plaintiff,

**DECISION AND ORDER**

v.

1:24-cv-00694 (JJM)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to disability insurance benefits ("DIB") or supplemental security income ("SSI"). Before the court are the parties' cross-motions for judgment on the pleadings [15, 22]. [2] The parties have consented to my jurisdiction [23]. Having reviewed the parties' submissions [15, 22], the Commissioner's motion is granted, and plaintiff's motion is denied.

## BACKGROUND

The parties' familiarity with the 3,292-page administrative record [6, 7, 8] is presumed. Further, the parties have comprehensively set forth in their papers the plaintiff's

1 In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

2 Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

treatment history and the relevant medical evidence. Accordingly, I refer below only to those facts necessary to explain my decision.

In May 2021, plaintiff filed an application for DIB, alleging a disability beginning on August 28, 2014 due to lupus, fibromyalgia, Lyme disease, Reynaud's disease, Sjogren's syndrome, depression, anxiety, panic attacks, asthma, blood clotting disorder, chronic migraines and chronic pain/inflammation. Administrative Record [6] at 346, 404. She later filed, in May 2022, an application for SSI. Id. at 351. A prior application for benefits was denied by an Administrative Law Judge ("ALJ") on September 29, 2017. Id. at 141-53. That determination was affirmed by this court on July 29, 2019. Id. at 167-82.

ALJ Brian LeCours held a hearing on February 28, 2023, at which plaintiff, who appeared with an attorney, testified. *See* id. at 42-83 (transcript of hearing). At the hearing, plaintiff amended her onset of disability date to September 30, 2017 - the day after the previous unfavorable decision. ALJ LeCours then arranged for Steven Goldstein, M.D. to respond to Medical Interrogatories. *See* id. at 81-82; 3160-70. He held a second hearing on July 26, 2023. Plaintiff, who was again represented by counsel, testified. Id. at 106-16. Dr. Goldstein and a vocational expert, Michael Smith, also testified. Id. at 92-105, 116-26.

Concerning her past work as a receptionist, plaintiff testified that her duties were to "answer the phones, schedule appointments" and "room patients if needed". Id. at 108. ALJ LeCours noted that the prior ALJ had found that position was sedentary, with lifting restricted to ten pounds or less. Id. Plaintiff agreed this was accurate. Id. The vocational expert did not hear this testimony. She also testified that in that position, what she "mainly" did "when I answered the phones, is typing". Id. at 121. She agreed that typing in that position was "frequent". Id.

The vocational expert testified that an individual with plaintiff's residual functional capacity ("RFC") could perform plaintiff's past work as a receptionist as that job was "defined in the DOT", but "not as she performed it" due to the frequent typing. Id. at 121. The DOT definition requires only "occasional fingering". Id. The vocational expert testified that, even if plaintiff were restricted to unskilled tasks, she could still perform the jobs of Information Clerk, (with 2,764 positions in the national economy), Charge Account Clerk (2,247 positions), and Callout Operator (1,983 positions). Id. at 123.

To determine plaintiff's RFC, ALJ LeCours considered functional assessments from Dr. Goldstein and Alexander Rovner, M.D., in addition to Dr. Goldstein's testimony. *See* id. at 22-29.

## A. The RFC and ALJ LeCours' Supporting Analysis

To determine the plaintiff's RFC, ALJ LeCours considered plaintiff's testimony (id. at 23), medical evidence and treatment records concerning plaintiff's headaches (id. at 25-26) and other conditions (id. at 23-25), and the opinion evidence (id. at 26-28). Based upon the record as a whole, ALJ LeCours concluded that plaintiff had the RFC to perform "sedentary work" with the following additional limitations:

> "[S]he can frequently operate pedal controls bilaterally; she can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs, but never climb ladders, ropes, or scaffold; she can frequently reach, handle, or feel bilaterally; she is limited to occasionally fingering with the right upper extremity and frequently with the left upper extremity; she can tolerate frequent exposure to extremes of heat or cold, humidity, or wetness; she can have frequent exposure to vibration; she must avoid exposure to loud noise, noise intensity level four and above, she must avoid exposure to pulmonary irritants, such as strong fumes, odors, dust, and gases; she can have occasionally exposure to hazardous conditions, such as unprotected

> heights and dangerous machinery; she can perform no driving duties."

Id. at 22.

ALJ LeCours outlined and analyzed in detail the medical evidence concerning plaintiff's headaches from 2017 through 2023. Id. at 25-26. He noted that plaintiff had neurologic treatment throughout the period at issue, "with varying levels of relief from multiple modalities". Id. at 25. He "found it noteworthy that neurology records offer varying figures regarding the claimant's headaches, and there is no evidence that she has kept a headache diary." Id. at 25. For example, plaintiff stated to her provider in September 2017 that she had "three-to-five headaches per month". Id. at 25, *referencing* [7] at 2224. In February 2018, however, plaintiff reported "improvement" with Botox, but endorsed "about six headache days per month". Id., *referencing* [7] at 2192. In November 2018, plaintiff estimated 10-20% improvement with Botox. Id. at 2135. She told her provider that she "used to have 30 headache days a month", but "[w]ith Botox she has 15-20 headache days a month". [6] at 26, *citing* [7] at 2135. In February 2019, only a few months later, she told her provider that she was 10% improved with Botox and estimated that "she would have about 15 migraine days a month", but "now has about 8 migraine days per month". Id. at 26, *citing* [7] at 2114. In May 2019, plaintiff stated she had "30 mild headaches per month and severe headaches eight times a month". Id., *referencing* [7] at 2077. In September 2019, she estimated 40% improvement with consistent Botox treatment, but in December 2019, she endorsed only 30% improvement. Id., *referencing* [7] at 2058, 2042. In December 2022, plaintiff told her provider that her migraines are "less severe and less frequent". Id. at 26, *citing* [8] at 2842.

Plaintiff's treating provider referred her to Dr. Rovner for evaluation in November

2022. *See* [8] at 2947. Plaintiff told Dr. Rovner that she had headaches between two and five times per month that lasted between two and three days each. Id. at 26, *referencing* 2947. She claimed that "nothing relieves them". Id. Dr. Rovner noted that plaintiff was ambulating with use of a cane, but his "physical examination was entirely within normal limits". Id., *referencing* 2947-48.

Finally, he considered the opinions in the record from Drs. Rovner and Goldstein. *See* id. at 27-28.

**1. Dr. Goldstein**

Dr. Goldstein reviewed plaintiff's medical records and responded to Medical Interrogatories. *See* [8] at 3160-70. Dr. Goldstein considered whether plaintiff's migraine headaches met the elements of the Listing of Impairments for migraine headaches, but concluded they did not. Id. at 3161. He stated that there was "no evidence for severe impairment of ability to stay on task". Id.; *see also* [6] at 98-104. He opined that plaintiff could occasionally lift and carry up to 10 pounds. Id. at 3163. He stated plaintiff could sit for up to 3 hours at a time, and for a total of 6 hours in an 8-hour workday, and could stand and walk for up to 30 minutes at a time and up to 1 hour total during an 8-hour workday. Id. at 3165. Plaintiff could frequently use her hands for reaching, handling, fingering, feeling, pushing, and pulling, except that she could only occasionally finger with her right hand. Id. at 3166. She can frequently use her feet to operate foot controls. Id.

Dr. Goldstein opined that plaintiff could occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl, but never climb ladders and scaffolds. Id. at 3167. She could occasionally be exposed to unprotected heights, moving mechanical parts, humidity and

wetness; never operate a motor vehicle or be exposed to pulmonary irritants; and frequently be exposed to vibration or extreme heat or cold. Id. at 3168. His opinion was stated to a reasonable degree of medical certainty. [6] at 112.

ALJ LeCours found Dr. Goldstein's opinion to be "generally persuasive" because it was based on Dr. Goldstein's "review of the entirety of the medical evidence and is consistent with the objective medical evidence" concerning all of plaintiff's various conditions. Id. at 27.

**2. Dr. Rovner**

Dr. Rovner completed a Headaches Medical Source Statement on February 27, 2023. [8] at 3139-45. He stated plaintiff's headaches were "[s]evere" and prevented "all activity". Id. at 3139. Plaintiff had 2.5 headaches per week and each lasted two to three days. Id. Her headaches were triggered by bright lights, carbonated drinks, lack of sleep, noise, stress, strong odors, and weather changes. Id. at 3143. Her headaches were relieved by lying down, medication, a quiet and dark room, and hot packs. Id. Emotional factors, such as depression, anxiety, and panic attacks contributed "very much" to her headaches. Id. Dr. Rovner concluded that plaintiff was "[i]ncapable of even 'low stress' work" and that she could not work "due to all [her] medical conditions". Id. at 3141-43.

ALJ LeCours found Dr. Rovner's opinion "not persuasive". [6] at 28. Given his own review of plaintiff's medical records, he determined that the severe level of disability reflected in Dr. Rovner's report was "based solely on the claimant's subjective complaints" and did not "represent the claimant's functioning throughout the period at issue based on other treatment reports". Id. To support his treatment of Dr. Rovner's opinion, ALJ LeCours pointed to the inconsistent statements plaintiff made to other treatment providers concerning the

frequency and duration of her headaches, and the effectiveness of different treatments. Id. He noted plaintiff had not kept a headache diary. Id. In addition, Dr. Rovner based his opinion on "all" of plaintiff's medical conditions, "most of which were outside he scope of his treatment of the claimant". Id. Finally, ALJ LeCours noted that Dr. Rovner's findings upon examination of the plaintiff were "consistently . . . within normal limits". Id.

**B. The Parties' Arguments**

Plaintiff argues that ALJ LeCours erred at step four by finding she could perform her past relevant work and, at step five, failed to meet the Commissioner's burden to demonstrate there were a significant number of jobs in the economy that she could perform notwithstanding her RFC. Plaintiff's Memorandum of Law [15-1] at 12-25. First, she notes that the ALJ erred in his finding that plaintiff could perform her past relevant work as a receptionist as she performed it. Id. at 14. In fact, the VE testified that a person with plaintiff's RFC would not be able to perform plaintiff's work as a receptionist as she performed it. [6] at 121 ("as defined in the DOT, yes, [the receptionist job] could be performed, but not as she performed it" with frequent, as opposed to occasional, typing, *i.e.* fingering).

She argues further that ALJ LeCours erred by finding she could perform the receptionist job as generally performed, because he overlooked the information plaintiff wrote in her Work History Report about that position. [15-1] at 14. Plaintiff lifted up to fifty pounds, but "frequently" less than ten pounds; and walked, stood, sat, kneeled, crouched, handled large objects, reached, and typed eight hours per day. [6] at 446. Given these representations, plaintiff argues that ALJ LeCours should have classified her reptionist job as a "composite job". [15-1] at 13-15. She argues that the physical demands of her receptionist job included duties contained in

the Orderly job description, which is a "heavy" exertional job, and therefore could not be used to deny her claim at step four given the sedentary RFC. Id. at 15.

Second, plaintiff argues that ALJ LeCours failed to satisfy the Commissioner's burden at step five because he did not identify jobs that plaintiff could perform that exist in significant numbers in the national or regional economy. Plaintiff's Memorandum [15-1] at -25. While courts in this Circuit typically find this element satisfied where an ALJ identifies jobs with at least 9,000 positions available in the national economy, the jobs identified by ALJ LeCours fall short of this metric, totaling only 7,024 jobs collectively. Id. at 22-24.

The Commissioner argues that plaintiff has waived this argument because neither she nor her attorney challenged the VE's testimony on this basis at her hearing, in her post-hearing brief, or in her submission to the Appeal Council. Commissioner's Brief [22-1] at 21-22. Instead, plaintiff argued only that the RFC did not allow her to perform the Receptionist job as generally performed. Id. at 22. Finally, the Commissioner argues that ALJ LeCours properly classified plaintiff's past relevant work based upon the plaintiff's own testimony of the primary functions of her Receptionist job. Id. at 24. Based upon plaintiff's testimony, ALJ LeCours was entitled to reject the plaintiff's implausible description of her job duties in her Work History Report. Id. at 24-26. In any event, the Commissioner argues that ALJ LeCours' finding that plaintiff could perform the job of receptionist as generally performed was sufficient to reject plaintiff's claim at step four. Id. at 26-27. Accordingly, the Commissioner does not address plaintiff's step five argument. Id. at 27, n. 10

Plaintiff argues that ALJ LeCours also erred when he failed to find that her migraines were a severe impairment or to account for functional limitations caused by her migraines in the RFC. Plaintiff's Memorandum [15-1] at 25-33. She argues the ALJ erred when

he required objective diagnostic evidence of migraine headaches because there is no diagnostic test for headaches. Id. at 26-28. ALJ LeCours erred further when he failed to incorporate into the RFC limitations related to plaintiff's migraines, including limitations for bright lights or stress. Id. at 28-30. She argues that ALJ LeCours failed to "adequately address" Dr. Rovner's opinion by "utterly rejecting" it. Id. at 31.

The Commissioner argues that ALJ LeCours adequately addressed Dr. Rovner's opinion and considered the evidence of functional limitations related to plaintiff's migraine headaches. [22-1] at 13-18. The ALJ rejected Dr. Rovner's opinion because it was inconsistent with his treatment notes and contemporaneous treatment notes from other providers. Id. at 15-16. The Commissioner notes that Dr. Goldstein did not incorporate greater restrictions into his opinion after considering the complete medical file. Id. at 16. Finally, plaintiff failed to cite any treatment note that supports Dr. Rovner's assessment or that support inclusion of any additional restrictions in the RFC. Id. at 17.

For the following reasons, I agree with the Commissioner.

## DISCUSSION

### A. Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938). The court is not entitled to re-weigh the evidence or to second-guess the ALJ's

resolution of factual issues. "In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)).

"[U]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record". Cheatham v. Commissioner, 2018 WL 5809937, *9 (W.D.N.Y. 2018); *see also* Brault v. Commissioner, 683 F.3d 442, 448 (2d Cir. 2012) ("the substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*") (emphasis in original).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

The RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision" and an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Summary Order). *See also* Young v. Berryhill, 2018 WL 2752443, *2 (W.D.N.Y. 2018) ("[i]t is well settled that an ALJ need not adopt one or more medical opinions verbatim in order to render a sufficiently-supported RFC determination"). It is "well

settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. . . . The opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record." Maleski v. Commissioner, 2020 WL 210064, *4 (W.D.N.Y. 2020); *see also* Camille v. Colvin, 652 Fed. Appx. 25, 28 (2d Cir. 2016) (Summary Order) ("[t]he ALJ was permitted to consider [treating] Dr. Dawood's treatment notes in weighing the opinions of Dr. Dawood and [consulting psychologist] Dr. Kamin; and she was permitted to conclude that Dr. Kamin's opinion was more reliable").

**B. The RFC is Supported by Substantial Evidence**

It is the ALJ's responsibility to "weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole". Matta v. Astrue, 508 Fed. Appx. at 56. In doing so, an ALJ may not "arbitrarily substitute [his/her] own judgment for competent medical opinion." Riccobono v. Saul, 796 Fed. Appx. 49, 50 (2d Cir. 2020) (Summary Order).

ALJ LeCours' analysis, read as a whole, satisfies his obligation "to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached". Lopez obo Y.T. v. Commissioner of Social Security, 2020 WL 4504987, *2 (W.D.N.Y. 2020) (internal quotation omitted). He neither mischaracterized nor cherry-picked the record to support his conclusions. Therefore, I find that his conclusions concerning plaintiff's RFC are supported by substantial evidence. That is, a "reasonable mind might accept" the evidence ALJ LeCours relied upon "as adequate to support his conclusion". Consolidated Edison Co., 305 U.S. at 229. The substantial evidence standard means that, "once an ALJ finds facts, we can reject those facts

only if a reasonable factfinder would *have to conclude otherwise*". Schillo v. Kijakazi, 31 F.4th 64, 74 (2d Cir. 2022) (emphasis in original), *citing* Brault, supra.

First, although ALJ LeCours did not list plaintiff's migraine headaches as a severe impairment, he considered at length the treatment notes and opinion evidence concerning plaintiff's migraines in his RFC analysis. *See* [6] at 25-26, 28. ALJ LeCours' analysis suggests that his omission of migraines from plaintiff's severe impairments could have been an oversight. In any event, because ALJ LeCours comprehensively addressed plaintiff's headaches as part of his RFC analysis, any error at step 2 was harmless.[3] *See* Reices-Colon v Astrue, 523 Fed. Appx. 796, 798 (2d Cir 2013) ("[e]ven if this argument had not been waived, any error would be harmless. At step two, the ALJ identified other "severe impairments," . . . [a]nd, in those subsequent steps, the ALJ specifically considered her anxiety and panic attacks . . . Because these conditions were considered during the subsequent steps, any error was harmless").

The ALJ considered at length the treatment notes related to plaintiff's migraines. *See* [6] at 25-26. He acknowledged the trigger point and Botox injections that plaintiff received and the various medications she was prescribed to treat her headaches. Id. He noted that plaintiff reported "improvement" and even "relief" as the result of some of the treatments. Id. ("noted improvement . . . with trigger point injections"; "some improvement with Botox"; "additional improvement with injections"; "5 days migraine free after she started working out at the gym"; "good results with sumatriptan"; "40-percent improvement"; "30-percent improvement").

---

3 Plaintiff argues at length that the ALJ erred at step 2 because positive findings on diagnostic testing is not required to substantiate migraine headaches as a severe impairment. [15-1] at 26-29. I agree. *See* Ramona R. v. Saul, 2021 WL 732694, *4 (W.D.N.Y. 2021) ("district courts within the Second Circuit, including this court, have repeatedly acknowledged that there is no objective test for migraine headaches"). However, I need not address those arguments. Despite the ALJ's failure to include migraine headaches as a severe impairment at step 2, the ALJ did not discount plaintiff's claims that she experienced migraine headaches and considered the medical evidence of her headaches in subsequent steps.

ALJ LeCours noted, however, that "there is no evidence that [plaintiff] has kept a headache diary". Id. at 25. He also identified plaintiff's inconsistent statements over time concerning the number of headaches she was experiencing despite her repeated reports of improvement. Id. at 25-26 ("neurology records offer varying figures regarding the claimant's headaches"). "To be sure, an individual might experience totally disabling headaches without keeping a headache log, abstaining from triggers, or visiting the hospital. But the absence of such behaviors can still be relevant to he ALJ's overall assessment, when combined with other evidence." Snyder v. Commissioner, 2023 WL 1943108, *3 (2d Cir. 2023) (emphasis added).

It was against this backdrop that ALJ LeCours considered Dr. Rovner's opinion. Dr. Rovner stated that plaintiff's severe migraines "prevent all activity", occur "2.5 [times] per week" and last "2-3 days". Id. at 28. Dr. Rovner also reported that "nothing" relieves plaintiff's headaches. Id. Given plaintiff's reports of improvement with various treatments, ALJ LeCours was entitled to resolve the conflict in the evidence. He explained earlier in his analysis that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record". Id. at 23. This was one example. ALJ LeCours noted that Dr. Rovner's opinion "does not represent the claimant's functioning throughout the period at issue, based on other treatment reports". Id. at 28. He noted further that Dr. Rovner's statement that "nothing" relieved plaintiff's headaches was "not supported by statements in the records of Dent Neurologic Institute". Id.

Dr. Rovner examined plaintiff on November 2, 2022, December 13, 2022, and February 9, 2023. Id. at 2943-49; 2969-72. Despite plaintiff's reports of headaches occurring 2-5 times per week, with a pain escalating up to 10 out of 10, and lasting 2 to 3 days each, plaintiff

did not report that she had a headache during any of her appointments with Dr. Rovner. *See* id. at 2944, 2947, 2969.

The same is overwhelmingly true of plaintiff's treatment notes from DENT Neurologic Institute, where she treated regularly for her migraines. Notwithstanding her reports of headaches of varying frequency and intensity, she did not report having a headache on any of the days she visited her providers. Her treatment notes indicate she was in no distress during any visit except one. *See* id. at 2235 (July 28, 2017 "no distress"); 2225 (September 13, 2017 "no acute distress"); 2215 (October 24, 2017 "no distress"); 2209 (December 6, 2017 "no acute distress"); 2194 (February 28, 2018 "no acute distress"); 2161 (July 31, 2018 "no acute distress"); 2147 (September 6, 2018 "no distress"); 2137 (November 16, 2018 "no acute distress"); 2116 (Feburary 12, 2019 "no acute distress"); 2090 (May 7, 2019 "no distress"); 2087 (May 21, 2019 "no distress"); 2077-80 May 28, 2019 (no physical exam documented, but no distress or headache noted at time of visit); 2068 (August 6, 2019 "no distress"); 2064 (August 20, 2019 "no distress"); 2060 (September 10, 2019 "no acute distress"); 2044 (December 2, 2019 "no acute distress"); 2040 (January 13, 2020 "no distress"); 2027 (February 27, 2020 "[n]o acute distress"); 2843, 3176 (December 8, 2022 "mild distress"); 3174 (January 12, 2023 "no acute distress").

While there is evidence in the record that could have supported a different conclusion, ALJ LeCours' finding that Dr. Rovner's opinions were neither supported by his own treatment notes nor consistent with the other evidence in the record was supported by substantial evidence. His conclusion was based upon the plaintiff's treatment notes, her inconsistent reports of the frequency and severity of her headaches, her consistent reports of improvement, and plaintiff's functioning as demonstrated in her treatment records – including Dr. Rovner's own treatment notes. *See* id. at 28.

Finally, plaintiff does not argue that ALJ LeCours has cherry-picked or misrepresented her medical records and treatment notes, nor did I perceive any such behavior based upon my review of the evidence. On this record, ALJ LeCours satisfied his obligation "to construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached". Lopez obo Y.T. 2020 WL 4504987 at *2. Given this record, I cannot disturb ALJ LeCours' resolution of the conflict in the evidence. Schillo, 31 F.4th at 74 ("once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*").

It is plaintiff's burden to demonstrate that additional limitations should have been incorporated into the RFC. Beaman v. Commissioner, 2020 WL 473618, *6 (W.D.N.Y. 2020). Here, plaintiff did not cite any treatment record that supported Dr. Rovner's opined limitations. *See* [15-1] at 29-32. Plaintiff argues that the ALJ should have included additional limitations in the RFC for exposure to bright lights and stress. Id. at 30. However, aside from Dr. Rovner's functional assessment and her own testimony, she did not cite any treatment record that supported inclusion of any additional limitations. Id. at 30-33. As the Commissioner points out, Dr. Goldstein's functional assessment, which the ALJ found "generally persuasive", did not include any additional limitations for bright lights or stress. *See* [22-1] at 16-17; [6] at 27. ALJ LeCours was entitled to rely upon Dr. Goldstein's opinion in crafting the RFC. An ALJ is entitled to rely upon the opinions of non-examining medical consultants, so long as those opinions are "consistent with the rest of the evidence in the medical record". Mordean L. v. Commissioner of Social Security, 2020 WL 6886557, *3 (W.D.N.Y. 2020).

This court has upheld an ALJ's analysis of migraine headaches under similar circumstances:

> "Here, the ALJ's consideration of evidence of plaintiff's migraine conditions is abundantly clear. He discussed the medical records, opinions, and plaintiff's subjective complaints related to migraines at length and in relation to her functioning. . . . He engaged in a thorough and detailed review of plaintiff's migraine diagnosis, symptoms, and treatment. This discussion included reports from plaintiff's treatment providers at DENT Neurologic reflecting plaintiff's diagnosis with migraine . . . It noted plaintiff's diagnostic studies . . . and examinations. . . . It reflects the ALJ's consideration of the efficacy of plaintiff's various treatments, including medications (daily and rescue therapy), regular trigger point injections, and a nerve block. . . . The ALJ observed that plaintiff reported improved migraine with use of medication. . . . He further noted that plaintiff reported that her migraines were 'stabilized' by the trigger point injections. . . . The ALJ considered and discussed periods of worsening migraines but he referred to evidence of overall improvement in plaintiff's headache symptoms . . . These recent records were considered against plaintiff's testimony that she still suffered 8-10 migraines per month, which could last for days or hours and caused pain.
>
> * * *
>
> Although plaintiff argues that the evidence warranted additional RFC restrictions for migraines, she has not supported her conclusion with reference to any evidence that the ALJ overlooked or improperly discredited.
>
> * * *
>
> Indeed, the ALJ's reliance on the evidence discussed, his reconciling of conflicting evidence, and his consideration of the expert opinions is wholly appropriate. Plaintiff's challenges are based on disagreement with the ALJ's weighing of the evidence in the record. However, such a challenge does not warrant reversal of the ALJ's decision."

Christine M. v. Commissioner, 2022 WL 130900, *8 (W.D.N.Y. 2022).

Accordingly, I find that ALJ LeCours' analysis here is likewise supported by substantial evidence.

C. **ALJ LeCours' Step 4 Determination is Supported by Substantial Evidence**

ALJ LeCours found that plaintiff "is capable of performing [her] past relevant work as a receptionist". [6] at 29. He found that plaintiff could perform that job "as actually and generally performed". Id. At the February 28, 2023 hearing, plaintiff testified that she had not worked since the hearing held on her previous claim for benefits. [6] at 50. At the July 26, 2023 hearing, Plaintiff's testimony concerning her past relevant work as a receptionist was brief:

> "Q: And at the prior [ALJ] decision, the prior [ALJ] made a finding of fact . . . indicating he found the past relevant work to be the following. A CNA, Certified Nurse's Assistant, DOT code 355.674-014, medium, semi-skilled, SVP: 4, which [plaintiff] may have don at the heavy level of exertion. The next one is Receptionist, DOT 237.367-035, sedentary level of exertion, SVP 4. And finally, Medical Assistant, DOT 079.362-010, light, SVP: 6 . . . Tell me about the Reception duties you did.
>
> A: I would answer the phones, schedule appointments. . . . Room patients, if needed.
>
> Q: All right. And here it looks like the lift/carry was found by the Law Judge as sedentary, which would be ten pounds or less. Is that what you did as a Reception[ist]?
>
> A: Yes."

Id. at 107-108.

At some point during the plaintiff's testimony, the vocational expert was disconnected from the hearing. Id. at 116-17. However, he agreed that he "heard the testimony regarding the past work" and the ALJ's "characterization of the prior finding of the prior ALJ in terms of making findings of past relevant work". Id. at 118. The VE testified that he would use the same DOT descriptions of the plaintiff's past relevant work: CNA, Receptionist, and Medical Assistant. Id. at 119.

During the ALJ's questioning of the vocational expert, plaintiff provided additional details of her work as a receptionist:

> "Q: Ma'am, how much typing did you do when you did the Reception position?
>
> A: That's mainly what I did when I answered the phones, is typing.
>
> Q: You did typing and answering the phones at the same time?
>
> A: Yes.
>
> Q: And that's mainly what you did? That was frequent?
>
> A: Yes."

Id. at 121. Based upon this testimony, and the assumption that the prior ALJ accurately described plaintiff's past relevant work (which plaintiff agreed was accurate), the vocational expert found that a person with plaintiff's RFC could perform her past work as a receptionist "as defined in the DOT", "but not as she performed it", due to her frequent typing. Id. at 121. The DOT definition of the receptionist position requires only "occasional fingering". Id.

Plaintiff's testimony concerning the typical duties of her receptionist position appears to differ from the information she included on her Work History Report. *See* [15-1] at 14-15; [6] at 446. On that form, plaintiff claimed that she was required to perform each of the following activities for eight hours per day: walk; stand; sit; stoop; kneel; crouch; handle, grab or grasp big objects; reach; and write, type, or handle small objects. [6] at 446. Although the heaviest weight she ever lifted in that position was 50 pounds, she "frequently" lifted "less than 10 pounds". Id. At most, plaintiff's Work History Report presents a factual conflict for the ALJ to resolve. Given plaintiff's testimony and the prior ALJ's findings of fact, I find that ALJ LeCours did not err in his characterization of plaintiff's past relevant work as a sedentary

receptionist position. He was entitled to rely on the prior ALJ's findings concerning plaintiff's past relevant work[4] coupled with the plaintiff's testimony that those findings were accurate, and her testimony that she "mainly" answered phones and typed in that position.

I agree with plaintiff that ALJ LeCours erroneously found that the plaintiff could perform her work as a receptionist as she actually performed it. *See* [15-1] at 14; [6] at 29. The vocational expert testified that she could not, due to frequent typing and the RFC restriction to occasional fingering with her right hand. [6] at 121. However, this error does not warrant remand:

> "As Defendant notes, the ALJ did err in concluding that Plaintiff could perform her past work as a receptionist *as she actually performed it*. . . . The functional requirements of her receptionist job, as set forth in Plaintiff's disability report and work history report . . . exceed the RFC as determined by the ALJ . . . However, for a step four error to warrant remand, the claimant has the burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally. . . . Because . . . the ALJ did not err in finding that Plaintiff had the RFC to perform her past relevant work as a receptionist as it is normally performed in the national economy, the ALJ's error in finding she could perform her past work as she had actually performed it is harmless error".

Hayes v. Colvin, 2014 WL 2168082, *8 (W.D.N.Y. 2014); *compare* Lewis v. Commissioner, 2018 WL 557869, *11 (N.D.N.Y. 2018) ("[b]ecause the ALJ's finding that Plaintiff could perform his past relevant work as a building-construction inspector as actually performed is sufficient to negate a finding of disability at step four, any error in determining that [p]laintiff could perform this work as generally performed is harmless error"); 20 C.F.R. §404.1560((b)(2)

[4] Although plaintiff challenged in this court other aspects of the prior ALJ's decision, she did not challenge his characterization of her past work as a receptionist with a sedentary level of exertion. *See* [6] at 167-82 (Decision and Order dated July 29, 2019). Nor, as the Commissioner points out, did plaintiff's attorney challenge this characterization of her past work during her hearing before ALJ LeCours. *See* [22-1] at 21-22; [6] at 107-108, 124-126 (attorney examination of vocational expert).

("a vocational expert or specialist may offer expert opinion testimony . . . about whether a person with the physical and mental limitations posed by the claimant's medical impairments can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy").

Plaintiff does not challenge ALJ LeCours' finding that a person with her RFC could perform the work of a receptionist as it is generally performed. [15-1] at 12-19. On this record, ALJ LeCours' finding that plaintiff could perform her past relevant work as it is generally performed was supported by substantial evidence.

Finally, plaintiff argues that the ALJ failed to resolve a conflict with the DOT because plaintiff's description of how she performed the receptionist job in her Work History Report differed from the DOT description of a reception job as sedentary. [15-1] at 17-18. This argument is without merit. *See* Jasinski v. Barnhart, 341 F.3d 182 (2d Cir. 2003) (finding no conflict between the DOT description of a job and a vocational expert's testimony concerning that job as it was performed by the plaintiff).

ALJ LeCours' determination of plaintiff's RFC was based upon substantial evidence. His finding that plaintiff could perform her past relevant work as a receptionist as it is generally performed in the national economy was likewise based upon substantial evidence. I need not, therefore, address plaintiff's arguments concerning step 5 of the analysis.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [22] is granted, and plaintiff's motion [15] is denied.

**SO ORDERED**.

Dated: September 30, 2026

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge